# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT C. BORING, | : |
| | : Civil No.1:12-CV-419 |
| Plaintiff | : |
| | : (Judge Jones) |
| v. | : |
| | : (Magistrate Judge Carlson) |
| DR. SANDERS, et al., | : |
| | : |
| Defendants | : |

## MEMORANDUM OPINION AND ORDER

### I.    Statement of Facts and of the Case

This is a *pro se* civil rights action brought by Robert Boring, a state inmate who was confined at the State Correctional Institution (SCI) Rockview. (Doc. 1.) In his complaint, filed on March 6, 2012, Boring named prison medical staff, Dr. Sanders and Hospital Care Administrator Ted Williams, as defendants and advanced an Eighth Amendment medical deliberate indifference claim, and a related state law medical negligence claim, arising out of the eye care which Boring alleges he has received while in custody. According to the well-pleaded facts set forth in Boring's complaint, the plaintiff suffers from cataracts in both of his eyes, a medical condition which has led to a progressive loss of vision for Boring. In December of 2010, while

1

he was in custody, Boring received surgery to remove these cataracts from his right eye. (Id.) Following this surgery Boring was seen by Dr. Sanders, and requested that surgery be scheduled to remove the cataracts from his left eye. (Id.) Boring alleged that Dr. Sanders refused to schedule this second cataract surgery, telling Boring that his overall vision was now adequate, and further surgery was not required under prison medical policies. (Id.) Voicing a concern that he was becoming blind in his left eye, Boring appealed this medical judgment to Health Care Administrator Williams, who denied his request for this additional cataract surgery on May 4, 2011, stating that his overall vision was now adequate given the successful cataract surgery Boring had received on his right eye in December 2010. (Id.)

This matter now comes before the Court on a motion to compel filed by Boring, which seeks copies of the plaintiff's medical records, pertinent Department of Correction policies relating to health care and specifically medical treatment for vision problems, and copies of all grievances filed against the defendants relating to eye care. (Doc. 48.) The defendants have now responded to this motion, providing Boring with access to his medical records and copies of pertinent prison policies, but objecting to be compelled to conduct any search of inmate grievances regarding eye care. (Doc. 49.)

For the reasons set forth below, the motion will be DENIED, in part, and GRANTED, in part.

**II.     Discussion**

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, the scope of what type of discovery may be compelled is defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)( C ).

Fed. R. Civ. P. 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the Court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the

scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

A party moving under Rule 37 to compel discovery, or for sanctions, bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009).

At the outset, Boring seeks to review pertinent prison policies governing eye care. The defendants have responded by producing what they represent to be the pertinent policy excerpts. Therefore, this request is moot.

Second, Boring seeks to review his own prison medical records. The defendants note that, with respect to this request, when an inmate initiates a request for production of his own medical records, in accordance with the DC-ADM 003, "Release of Information," the Department's procedure provides a method by which he is given a reasonable amount of time to examine and inspect the requested documents. As part of this procedure, the inmate must initiate this process by submitting Department Form DC-135A "Inmate Request to Staff" to the Superintendent's Assistant or his/her designee at his current institution. The inmate may then review the documents and obtain copies of any documents at his expense; however, charges for the photocopies are made in accordance with the Department's policies and procedures. Thus, we understand that the defendants do not object to Boring's access to his own medical records. Rather, they simply urge the Court to direct Boring to comply with these procedures when requesting medical records.

We believe that compliance with the prison regulations is a fitting and proper procedure for Boring to follow in securing access to these medical records. Indeed, in this regard we note that courts have frequently directed or encouraged inmates to

comply with reasonable institutional procedures when securing copies of their own prison medical records for litigation purposes. See, e.g., Bull v. United States, 143 F.App'x 468 (3d. Cir. 2005); Daniels v. Kelchner, No. 05-1601, 2007 WL 2068631 (M.D. Pa. July 17, 2007). Therefore, with respect to this request, it is ordered that Boring's request be granted, in part, provided that he completes the procedures prescribed by Department of Corrections policies.[1]

---

[1] We note that those policies, in part, call for Boring to bear the cost of making copies of these medical records. While Boring has not made a specific request to have the defendants bear these costs, we note that nothing in 28 U.S.C. § 1915 authorizes federal courts to finance or pay for a party's discovery expenses incurred while prosecuting a lawsuit, even if that party has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a). Review of the case law reveals that numerous courts within and without the Third Circuit have recognized the limitations of federal courts to relieve indigent litigants from the costs of pre-trial discovery. See, e.g., Brooks v. Quinn, 257 F.R.D. 515, 417 (D. Del. 2009) ("Although plaintiff is proceeding in forma pauperis, the court has no authority to finance or pay for a party's discovery expenses. . . . It is plaintiff's responsibility to pay for the costs associated with the taking of a deposition."); Augustin v. New Century TRS Holding, Inc., No. 08-326, 2008 U.S. Dist. LEXIS 96236, at *7-9 (W.D. Pa. Nov. 25, 2008) (denying plaintiff's IFP application to cover costs for discovery requests); Badman v. Stark, 139 F.R.D. 601, 605 (M.D. Pa. 1991) (28 U.S.C. § 1915 does not require the government to advance funds for deposition expenses); Toliver v. Community Action Comm'n to Help the Econ., 613 F. Supp. 1070, 1072 (S.D.N.Y. 1985) (no clear statutory authority for the repayment of discovery costs for IFP plaintiff); Sturdevant v. Deer, 69 F.R.D. 17, 19 (E.D. Wis. 1975) (concluding that 28 U.S.C. § 1915 "does not extend to the cost of taking and transcribing a deposition."); Ebenhart v. Power, 309 F. Supp. 660, 661 (S.D.N.Y. 1969) ("Grave doubts exist as to whether [28 U.S.C. § 1915] authorizes this court to order the appropriation of Government funds in civil suits to aid private litigants in conducting pre-trial discovery."); see also Tabron v. Grace, 6 F.3d 147, 159 (3d Cir. 1993) ("There is no provision in [28 U.S.C. § 1915] for the payment

Finally, Boring asks for copies of any grievances submitted by other inmates citing the defendants for medical mistreatment with respect to eye care. Boring argues that this material is relevant to his case because it may disclose a pattern or common course of conduct on the part of the defendants, something which would be probative of a claim of deliberate indifference to serious medical needs.

The defendants have objected to this request citing several grounds. First, the defendants contend that the disclosure of these third party complaints would violate the privacy rights of those third parties. See Mincy v. Chmielewski, No. 05-292, 2006 WL 3042968 (M.D.Pa. Oct. 25, 2006)(denying access to third-party complaints on privacy grounds). In addition, the defendants contend that this material is not relevant or calculated to lead to the discovery of admissible evidence since evidence of other wrongs is not admissible in federal proceedings. Further, the defendants note that the release of grievances which are mere allegations, particularly those which are not substantiated, may be far more prejudicial to the defendants than probative for the plaintiff. Finally, the defendants note that this request may require a manual inspection of more than 670 grievances, which they contend is an undue burden.

---

by the government of the costs of deposition transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant."). Thus, as a general rule, the Court lacks the lawful authority to help finance, or relieve plaintiff from, the costs associated with taking pre-trial discovery.

This particular request legally complex and problematic on a number of grounds. At the outset, we recognize that there are legitimate third-party privacy interests that may need to be addressed and protected in connection with this request. However, the scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined broadly. Thus, "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence".

As we understand it, Boring seeks information concerning other claimed episodes of medical neglect by the defendants in order to establish a pattern of behavior by the defendants, a pattern that would allow a fact-finder to infer a motive and intent, and a pattern that would rebut any claim of mistake or innocent error. If this is the basis for his request, then the request may, in fact, "lead to the discovery of admissible evidence." Rule 404(b) of the Federal Rules of Evidence governs the admissibility of other acts evidence and provides as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Fed. R. Evid. 404(b). With respect to the admissibility of Rule 404(b) other act evidence:

9

> While . . . Rule 404(b) is "construed as a rule of inclusion rather than exclusion," United States v. Scarfo, 850 F.2d 1015, 1019 (3d Cir.1988) (internal quotation marks omitted), [the courts] have also cautioned that the . . . reasons for introducing prior bad acts evidence may be a combination of showing a "consequential fact as well as ... impugn [ing a party's] character." United States v. Jemal, 26 F.3d 1267, 1272 (3d Cir.1994) (quoting United States v. Sampson, 980 F.2d 883, 886 (3d Cir.1992)). Therefore, "when evidence of prior bad acts is offered, the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that the [party] has the propensity to commit the [act] charged." United States v. Himelwright, 42 F.3d 777, 782 (3d Cir.1994) (citing Jemal, 26 F.3d at 1272).

United States v. Lindsay 339 F. App'x 268, 272 (3d. Cir. 2009)

In this case, given the fact that Rule 404(b) is defined as a "rule of inclusion", there may well be information in other inmate grievances which would be admissible under the Rule as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Fed. R. Evid. 404(b). However, no judgement on the relevance and admissibility of this evidence is possible in the abstract, and any assessment of these issues involves a multi-faceted and fact-specific analysis of both the proffered evidence and the party's claims. Recognizing that these prison records may contain arguably discoverable material, we note that in the past courts have reconciled the interests of inmate-plaintiffs and corrections officials by rejecting broadly framed requests for access to prison records, see Paluch v. Dawson, No. 06-1751, 2007 WL 4375937, *4-5 (M.D. Pa. Dec. 12, 2007), while conducting

10

an *in camera* review of those records which may be relevant to more narrowly tailored discovery demands. Paluch v. Dawson, No. 06-175, 2008 WL 2785638, *3 (M.D. Pa. July 17, 2008).

This is the course we will adopt here, subject to restrictions which we will outline for the parties. We are mindful of the burden that this request may impose, since the defendants represent that more than 670 health care grievances were filed at SCI Rockview from 2010 through 2012. We also recognize that unfounded accusations, standing alone, will have very little evidentiary relevance. Therefore, we will direct the defendants to only provide to the Court for its *in camera* inspection any other responsive inmate grievances submitted between December 2010 and March 2012, in which the inmate's grievance was upheld, citing the defendants for medical mistreatment in the field of eye care.

By limiting this search to well-founded grievances, and restricting the time period to the sixteen month period described in Boring's complaint, we believe that we reduce the burden upon the defendants, while ensuring that potentially pertinent information may be screened by the Court for relevance. Armed with this information the Court can then determine: (1) whether this information is relevant to the issues raised in this case; (2) whether it is subject to any valid claim of privilege recognized

by the Federal Rules; and (3) to what extent, in what format, and under what conditions it may be released to the plaintiff.

Accordingly, this 11th day of September 2013, it is ORDERED that the plaintiff's motion to compel, (Doc. 48.), is GRANTED, in part, and DENIED, in part, as follows:

First, with respect to the plaintiff's request for access to his own medical records, it is ordered that Boring's request is granted, in part, provided that he completes the procedures prescribed by Department of Corrections policies.

Second, with respect to Boring's request for access to pertinent prison policies, this request is denied as moot given the defendants' response releasing what they represent to be the pertinent policies.

Third, on or before **October 9, 2013**, we direct the defendants to provide to the Court for its *in camera* inspection to provide to the Court for its *in camera* inspection any other responsive inmate grievances submitted between December 2010 and March 2012, in which the inmate's grievance was upheld, citing the defendants for medical mistreatment in the field of eye care. Armed with this information the Court can determine: (1) whether this information is relevant to the issues raised in this case; (2) whether it is subject to any valid claim of privilege recognized by the

Federal Rules; and (3) to what extent, in what format, and under what conditions it may be released to the plaintiff.

So ordered this 11th day of September 2013.

**<u>S/Martin C. Carlson</u>**
Martin C. Carlson
United States Magistrate Judge
